NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRACIELA MEDINA,<br><br>                  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Civil Action No. 18-12636 (SDW)<br><br>**OPINION**<br><br>January 23, 2020 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Graciela Medina's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Ricardy Damille's ("ALJ" or "ALJ Damille") denial of her claims for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Damille's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On April 9, 2014, Plaintiff filed applications for disability insurance benefits ("DIB") and for supplemental security income ("SSI"), alleging disability as of November 26, 2013, due to pain in her neck, back, shoulders, ear, and head, stemming from a car accident. (Administrative Record [hereinafter Tr.] 13, 85.) Her claim was denied on October 8, 2014, and again on reconsideration on December 4, 2014. (Tr. 13.) On January 10 and June 30, 2017, Plaintiff appeared with counsel and testified at administrative hearings in Newark, New Jersey, before ALJ Damille. (Tr. 13, 35-84.) Vocational Expert Rocco J. Meola ("VE Meola") also testified at both hearings. (Tr. 13, 35-84.) On September 15, 2017, ALJ Damille issued an unfavorable decision ("September 15 Decision"), finding that Plaintiff was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act since November 26, 2013, and denied her applications for DIB and SSI. (Tr. 13-14.) On June 8, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was thirty-nine years old at the alleged onset of her disability. (Tr. 27.) Plaintiff's most recent job was as a school bus driver. (Tr. 507.) She had this job for four years, until she suffered an accident on November 26, 2013, in which a car hit her. (Tr. 502, 507-08.) She had prior jobs as a maid and a machine operator. (Tr. 286.)

#### 2. Medical History

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the symptoms associated with her disability claim. The following is a summary of the evidence.

Plaintiff was hit by a car on November 26, 2013. (Tr. 344.) She was brought to the emergency room at Raritan Bay Hospital, before being transferred to the Capital Health system. (Tr. 344, 494.) Her discharge diagnosis was that she suffered: traumatic subarachnoid hemorrhage; frontal contusion; occipital bone fracture; ligamentous injury to C1-C2; and right transverse sinus occlusion. (Tr. 344.) She was not given a major procedure. (Tr. 345.) After her discharge, Plaintiff had several follow-up visits at Capital Health. (*See, e.g.*, Tr. 447, 473.)

Plaintiff subsequently had follow-up appointments with Dr. John King ("Dr. King") from December 2013 to around April 2014. (Tr. 494, 497-500.) At these appointments, Plaintiff reported increasing headaches, lower back pain, and shoulder pain, and Dr. King found Plaintiff had pain with movement, but a good range of motion of her upper extremities. (Tr. 494-95, 499-500.) He assessed Plaintiff with "significant head trauma and posterior right occipital fracture exceeding to the posterior condyle with subdural hematoma as well as cervical sprain radiculitis and lumbar sprain with radiculitis as well as left hip contusion and derangement." (Tr. 496.)

Plaintiff also saw Dr. Dyana L. Aldea ("Dr. Aldea") on September 24, 2014, making similar complaints. (Tr. 501.) Plaintiff reported that her pain had radiated to her right ear, shoulder, and arm, and complained of decreased vision in her right eye. (Tr. 501.) Dr. Aldea found Plaintiff's gait was normal but had a markedly restricted range of back motion and restricted motion to her right shoulder. (Tr. 502-03.)

Plaintiff continued her treatment at the Jewish Renaissance Medical Center starting from around March 2015 through July 2016. Doctors from these appointments noted her lupus diagnosis years prior which was not followed up by rheumatology, and her potential Sjogren's syndrome. (*See, e.g.*, Tr. 525, 532, 558.) For this latter impairment, Plaintiff saw Dr. Jenak Goyal ("Dr. Goyal") on November 13, 2015. (Tr. 540.) Dr. Goyal's report diagnosed Plaintiff with

3

Sjogren's syndrome, but noted that Plaintiff was advised to get a biopsy in order to confirm such diagnosis, and she did not. (Tr. 540-41.)

Dr. Daryl Mitruska ("Dr. Mitruska"), a chiropractor from the Integrated Wellness Center, reported on Plaintiff as well. (Tr. 516.) Plaintiff began treatment there on January 21, 2015, making similar complaints, and while Dr. Mitruska found her condition had improved by the time of his July 14, 2016 report, Plaintiff still experienced regular pain and spasms. (*Id*.) Dr. Mitruska also noted Plaintiff could, on June 2, 2016, perform 5 bilateral step ups on a 16 inch box, 10 overhead presses with 10 pounds, 10 alternating lift/squats with 15 pounds, carrying and walking with a 10 pound weight, 5 minutes on a recumbent bike, and 8 minutes of lumbar intersegment exercises. (Tr. 519.) After diagnosing Plaintiff, he opined that she would be able to work part time, limited to four hours a day. (Tr. 519-20.)

Plaintiff additionally went to the JFK Neuroscience Institute in 2015 through 2016, and was seen by Dr. Martin Herman ("Dr. Herman") and Dr. Ronald Karnaugh ("Dr. Karnaugh"). (Tr. 595, 611.) There, while Plaintiff reported forgetfulness however, their reports indicated her memory was within normal limits. (Tr. 517; 622-23.)

Plaintiff also saw a social worker, Gladys Cardona ("Cardona") on May 19, 2016 regarding potential mental impairments. (Tr. 507-15.) Her complaints included, among other things, feeling depressed, fatigued, difficulty sleeping, poor concentration, and memory lapses. (Tr. 511.) Cardona diagnosed Plaintiff with major depression and post-traumatic stress disorder. (Tr. 512.)

### 3. Function Report

Plaintiff submitted a function report on May 19, 2014. (Tr. 278-85.) She reported difficulties in tending to her personal care due to mobility limitations and having no taste or smell. (Tr. 279.) She stated she prepares three light meals a day and conducts light housework. (Tr. 280.)

4

Plaintiff also reported that she is not able to exercise, and that her conditions affect her ability to lift, climb stairs, use her hands, bend, stand, reach, kneel, hear, complete tasks, concentrate, follow instructions, and additionally affect her memory. (Tr. 282-83.) She also reported she cannot walk for more than 20 minutes straight and can pay attention for up to 20 minutes, but is able to finish tasks and follow spoken and written instructions which are not too long. (Tr. 283.)

### 4. Hearing Testimony

ALJ Damille held a hearing on January 10, 2017, during which Plaintiff and VE Meola testified. (Tr. 53-84.)[1] Plaintiff testified that she last worked on November 26, 2013, the day of her accident. (Tr. 64.) She was a school bus driver at that time and had previously worked as a machine operator. (Tr. 64-65.) She testified that she did not believe she would be able to return to driving the school bus due to significant back and shoulder pain, that she could not lift over five pounds, and could not stand for over half an hour without feeling pain. (Tr. 70, 72-73.) She also reported trouble cooking, due to her injuries, and attended therapy with Cardona. (Tr. 75-76.)

VE Meola testified that a hypothetical individual sharing Plaintiff's vocational characteristics and limitations, as specified by the ALJ, would not be able to conduct Plaintiff's past work. (Tr. 80-82.) However, VE Meola testified that there would be other work available in the national economy for the hypothetical individual, such as a scale operator, preparer, and table worker. (Tr. 81-82.) ALJ Damille held another hearing on June 30, 2017, during which VE Meola testified. (Tr. 35-52.) Plaintiff's attorney requested this second hearing in order to further question VE Meola. (Tr. 37.)

## II. LEGAL STANDARD

### A. Standard of Review

---

[1] VE Meola is erroneously listed as "Marco Maniello" on the hearing transcript. (*See, e.g.,* Tr. 80.)

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is

not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained

basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. **DISCUSSION**

In the September 15 Decision, ALJ Damille properly applied the five-step disability test and determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 13-29.) The

ALJ's findings are supported by substantial evidence. There is no basis for reversal or remand because Plaintiff's complaints are not supported by the objective medical evidence on the record.

At step one, the ALJ determined that Plaintiff did not engage in SGA since November 26, 2013, the alleged onset date. (Tr. 15); *see also* 20 C.F.R. § 404.1571 *et seq.*; 20 C.F.R. § 416.971.

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical disc herniation, lumbar and cervical radiculopathy, left hip contusion and derangement, post-traumatic headaches, and depression. (Tr. 15); *see also* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

The ALJ, however, determined Plaintiff's diagnoses and complaints of: dermatitis, hemorrhoids, vitamin D deficiency, a hernia, and an ovarian cyst (collectively, the "First Group") in addition to her lupus, Sjogren's syndrome, and post-traumatic stress disorder (collectively, the "Second Group"), were not severe under the Act. (Tr. 16.) The ALJ found the conditions in the First Group did not have more than a minimal impact on Plaintiff's ability to perform basic work activities, finding that they were managed medically. (Tr. 16.) As to the Second Group, the ALJ noted Plaintiff reported in 2015 that she did not take medication for lupus and did not follow through with rheumatology (Tr. 16, 592, 596); also in 2015, Plaintiff received a potential diagnosis for Sjogren's syndrome, however did not confirm this diagnosis via a biopsy, as her doctor recommended. (Tr. 16, 540-41.) Lastly, the ALJ found no diagnosis or treatment was given for Plaintiff's alleged post-traumatic stress disorder, despite some mention of it in her primary care records. (Tr. 16, 549.) Given this, the ALJ found that the objective medical evidence was insufficient to confirm these diagnoses, show that treatment for them was unmanageable, or show that these impairments inhibited her ability to perform basic work activities. (Tr. 16.) The ALJ's conclusions are supported by substantial evidence.

At step three, ALJ Damille found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; (Tr. 16-18.)

Plaintiff did not meet listing 1.02, which addresses major dysfunction of a joint, as she did not demonstrate gross anatomical deformity, chronic joint pain, and stiffness with signs of limitation of motion or other abnormal motion of the affected joints, resulting in an ability to ambulate effectively or involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively, as required by the listing. (Tr. 16); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

Plaintiff did not meet listing 1.04, which addresses disorders of the spine, as she did not demonstrate a compromise of the nerve root or spinal cord, as required by the listing. (Tr. 17); 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The ALJ made additional findings that Plaintiff did not fit the criteria of this listing, such as a lack of showing evidence of spinal arachnoiditis. (Tr. 17.)

Plaintiff did not meet listing 11.14, which addresses peripheral neuropathy, as she did not demonstrate a disorganization of motor function in two extremities, as outlined in the listing, or a marked limitation in physical functioning and in understanding, remembering, or applying information, or other limitations as outlined in the listing. (Tr. 17); 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14.

The ALJ's findings for these listings are supported by substantial evidence. As will be discussed below, the ALJ points to significant, substantial evidence supporting his findings as to Plaintiff's claim of disability.

Plaintiff did not meet listing 12.04, which addresses depressive, bipolar, and related disorders. The ALJ first considered the Paragraph B criteria, which requires that the mental

11

impairment result in at least one extreme, or two marked limitations in a broad area of functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b); (Tr. 17).[2] The ALJ found Plaintiff had only mild or moderate limitations in these areas of functioning. (Tr. 17-18.) The ALJ's findings are supported by substantial evidence. He considered, among other things, Plaintiff's statements that she was able to self-report information about her health; gets along with others; spends time with friends and family; deals appropriately with authority; can handle her own medical care; can handle her self-care; and exhibited no problems with temper control. (Tr. 17-18, 278, 281-284.)

The ALJ also considered the Paragraph C criteria of listing 12.04, under which a plaintiff must show a medically documented history of a mental disorder which has lasted for at least two years, and that, despite diminished symptoms and signs due to treatment, Plaintiff has only achieved "marginal adjustment" or a minimal capacity to adapt to changes. (Tr. 18); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b)-(c); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(G)(2)(a)-(c). The ALJ's findings are supported by substantial evidence. While the ALJ found Plaintiff's impairment lasted for over two years, he found the evidence did not show only a marginal adjustment, noting Plaintiff participated in and made decisions regarding her medical treatment. (Tr. 18.)

Before undergoing the analysis in step four, ALJ Damille determined Plaintiff's RFC. (Tr. 18-27.) The ALJ properly found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) and 416.967(a)," (Tr. 18.), finding:

> [Plaintiff] is restricted to frequent pushing and[/]or pulling with the right upper extremity. She can occasionally climb ramps and stairs, but never clumb ladders, ropes, and scaffolds. She can occasionally balance and stoop, but never kneel, crouch, and crawl. She can frequently reach in all directions with the right upper extremity. She can frequently handle and finger with the right. She can frequently turn the neck in all directions. She must be afforded the option to alternate from

---

[2] These areas of functioning include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (Tr. 17.)

> sitting to standing, so long as she is not off task for more than ten percent of the
> workday. She must avoid all exposure to hazards such as machinery and heights.
> She can understand, remember, and carry out simple instructions.

(Tr. 18-19.)

In making this determination, the ALJ extensively considered all symptoms and the extent to which they can reasonably be accepted and consistent with the objective medical evidence based on the requirements of 20 C.F.R. § 416.929. (*See* Tr. 19-27.) He first found that Plaintiff's reported symptoms were supported by medically determinable impairments. (Tr. 19-20; 278-85, 295-99.) He, however, found her statements on the intensity, persistence, and limiting effects of the symptoms not consistent with the evidence. (Tr. 20.) For example, the ALJ noted that shortly after her accident, MRIs of her lumbar and thoracic spines were normal and additional testing at Capital Health was "mostly unremarkable." (Tr. 21, 398-99, 425, 439, 446-50.)

Though acknowledging reports of restricted motion and other difficulties, the ALJ also pointed to findings from Drs. King and Aldea, the Jewish Renaissance Center, and the JFK Neuroscience Institute showing Plaintiff had full or good range of motion in her upper extremities, as well as full or almost full strength (including in her right shoulder). (Tr. 21-23, 495, 503, 522, 596.) The ALJ also noted the findings of Dr. Mitruska, a chiropractor, who found that Plaintiff was able to, among other things, do ten overhead presses with ten-pound weights and ten alternating lift/squats with fifteen pounds, and was able to complete her routine exercises at each visit. (Tr. 25-26, 519.) The ALJ found this supported a finding that Plaintiff could more than occasionally reach with her right upper extremity. (Tr. 26.)

These reports also noted, though showing some forgetfulness, Plaintiff had a normal attention span and ability to concentrate. (Tr. 23-24, 580, 582, 622-23.) Additionally, the ALJ

noted reports finding Plaintiff had "normal mood and affect," though Plaintiff reported depression to a social worker. (Tr. 25; 511; 540, 541-43.)

Ultimately, the ALJ concluded that Plaintiff's conditions were overall moderate and managed conservatively. (Tr. 26.) Based on the ALJ's thorough consideration of the objective medical record, the ALJ's finding on Plaintiff's RFC is supported by substantial evidence.

At step four, the ALJ properly concluded that Plaintiff was unable to perform her past relevant work as a bus driver, inspector and hand packager, or housekeeper. (Tr. 27.) The ALJ's conclusion, relying on VE Meola's testimony and interrogatory responses, is supported by substantial evidence. (Tr. 27, 330-33.)

Thereafter, the ALJ proceeded to step five, and considering Plaintiff's age, education, work experience, and RFC, found that Plaintiff was not disabled because jobs "exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 28.) The ALJ came to this determination after considering the interrogatory response and testimony of VE Meola, who identified three jobs Plaintiff would be able to perform: Scale Operator; Preparer; and Table Worker. (Tr. 28-29, 332.)

Plaintiff argues that (1) the substantial evidence establishes that she is entitled to benefits under the Act, and the ALJ's decision should be reversed; or (2) the ALJ's decision is not supported by substantial evidence, and his decision should be remanded. (ECF No. 18 at 9.)

Plaintiff states she primarily contests the ALJ's findings on Plaintiff's RFC.[3] (*See* ECF No. 18 at 11.) Plaintiff first points to the ALJ's consideration of her Sjogren's syndrome, lupus, and post-traumatic stress disorder. She points to the medical record showing diagnoses or notations of these impairments, (*see* Tr. 541, 543, 549, 551), however, does not provide evidence

---

[3] Plaintiff's arguments are not limited to this step, appearing to also contest step two, three, and five conclusions.

14

contradicting the ALJ's findings that, based on the record, these impairments were not fully evaluated or treated, or affected her ability to perform basic work activities. (Tr. 16, 522, 540-41, 551, 596); *see also Holloman v. Comm'r of Soc. Sec*, 639 F. App'x 810, 814 (3d Cir. 2016) (at step three, rejecting Plaintiff's argument that certain impairments were not properly considered when he did not "identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not"); 20 C.F.R. § 416.912 (noting generally a claimant must prove disability for the administrative review process).

Plaintiff next contests the ALJ's findings regarding her range of movement limitations. (ECF No. 18 at 15, 18-19.) Specifically, Plaintiff contests the ALJ's finding that she can "frequently reach in all directions with the right upper extremity," and that she can "frequently turn the neck in all directions," when there is evidence on the record that her ability in this regard is limited. (Tr. 18-19, 501-06; ECF No. 18 at 18-19, 21-23.)

In evaluating these factors, the ALJ thoroughly considered and cited the record. For example, while noting reports of Plaintiff's marked limitations around 2014, (Tr. 22-23), the ALJ found Plaintiff, in her 2015 and 2016 appointments at the Jewish Renaissance Center, did not complain of neck or back pain, and "routinely denied muscle aches." (Tr. 23, 26, 576, 586.) He additionally pointed to an August 26, 2015 examination at the JFK Neuroscience Institute finding that Plaintiff's strength was "5/5 throughout except for 4+/5 in the hip flexors," and other medical reports showing that Plaintiff exhibited full strength and a full range of motion in her upper extremities. (Tr. 23-26, 519, 522, 596, 623.) The ALJ found Plaintiff's overall treatment conservative, and that the medical record was not consistent with Plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms. (Tr. 20, 26); *see also Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (noting evidence supporting "a contrary

conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision"). The ALJ's findings are supported by substantial evidence.

Lastly, Plaintiff contests the hypothetical question the ALJ presented to VE Meola. The "hypotheticals posed must 'accurately portray' the claimant's impairments and [ ] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Plaintiff argues that this question does not reflect all of Plaintiff's credibly established limitations, namely Plaintiff's neck, shoulder, and back pains. (Tr. 26-27.) This Court finds that the hypothetical question presented to VE Meola sufficiently encompassed all of Plaintiff's credibly established limitations. (Tr. 80-82, 331.)[4] As discussed above, the ALJ's findings on Plaintiff's impairments, including those related to Plaintiff's neck, shoulder, and back injuries, are supported by the substantial evidence, and his question to VE Meola is consistent with his findings.

## IV. CONCLUSION

Because this Court finds that ALJ Damille factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

---

[4] The ALJ asked VE Meola to consider a hypothetical individual who has "the same age, education, work experience as [Plaintiff]," and who "is restricted to light work except the individual can lift no more than ten pounds that's at frequent pushing and/or pulling with the right upper extremities. Can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. Can occasionally balance and stoop but never kneel, crouch and crawl . . . [and] can frequently reach over head into the side with the right upper extremity. Frequently handle and finger with the right . . . must avoid all exposure to hazards such as machinery and heights . . . [and] can understand, remember and carry out simple instructions." (Tr. 80-81.) The ALJ also asked VE Meola to consider the same hypothetical, but with an individual who also can "stand and/or walk for four hours in an eight-hour day . . . [and] must be afforded the option to alternate from sitting to standing so long as the individual is not off task for more than ten percent of the work day . . . ." (Tr. 81-82.)

16